**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SOUTHERN LOGISTICS, INC., an Alabama
Corporation,

        Plaintiff,                              Case No. _____

v.

CUSTOM ECOLOGY, INC., a Delaware
Corporation,

        Defendant.
_____/

## COMPLAINT

Plaintiff, Southern Logistics, Inc., by and through its undersigned counsel, brings this action against Defendant, Custom Ecology, Inc., and alleges as follows:

## INTRODUCTION

1.      Southern Logistics, Inc. ("Southern"), brings this case against Custom Ecology, Inc. ("Custom"), due to Custom's failure to pay Southern $688,053.46, plus late finance charges and fees, for industrial waste hauling operations in Clay County, Florida. Since June 2017, Southern performed hauling operations for Custom and invoiced Custom for its services under 30-day payment terms. Custom has issued payments to satisfy all of Southern's invoices from June 2017 until January 2020. However, over the last six months, without explanation, Custom has failed to pay Southern.

## PARTIES

2.      Plaintiff, Southern Logistics, Inc., is a family-owned Alabama corporation and has its headquarters and principal place of business in Fairhope, Alabama. Southern provides waste management services throughout the country, including industrial waste hauling services

in Clay County, Florida. For purposes of 28 U.S.C. § 1332, Southern is a citizen of Alabama.

3.      Defendant, Custom Ecology, Inc., is a Delaware Corporation with its principal place of business in Mableton, Georgia. Custom provides waste management services throughout the country, including industrial waste hauling services in Clay County, Florida. Custom provides waste transportation services in Florida and maintains a terminal office at 17339 New Brandy Branch Rd., Baldwin, Florida 32234. For purposes of 28 U.S.C. § 1332, Custom is a citizen of Delaware and Georgia.

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over Custom because Custom has personally availed itself to the laws and privileges of the State of Florida, Southern's claims arise from and are related to Custom's contacts with the State of Florida, Custom does business in the State of Florida (including out of its terminal office located in Baldwin, Florida), and Custom has continuous and systematic contacts with the State of Florida. The maintenance of this lawsuit in the State of Florida does not offend traditional notions of fair play and substantial justice.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (a) the amount in controversy exceeds $75,000, excluding interest and costs, and (b) this action is between citizens of different states as Southern is a citizen of Alabama and Custom is a citizen of Delaware and Georgia such that complete diversity exists.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (a) a substantial part of the events and omissions giving rise to Southern's claims occurred in Clay County, Florida, and (b) Custom resides in this District, for purposes of venue, because it is subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

7.      In June 2017, Southern and Custom reached an agreement for Southern to provide

waste hauling services in support of Custom's trash hauling operations from the Waste Management-supported Clay County Trash Transfer Station located in Green Cove Springs, Florida to the Waste Management ("WM") Chesser Island Landfill, located in Georgia.

8.     Custom's Terminal Manager, who is located in Florida, was involved in the contract negotiations between Custom and Southern.  Its Florida President of Operations, who is also located in Florida, communicated regularly with Southern during the performance of the agreement.

9.     Southern and Custom initially agreed that Southern would be paid $11.00 per ton for all tonnage hauled from Clay County to the Chesser Island Land Fill based on the Waste Management "Fast Lane"[1] tonnage reports and weigh tickets from the Chesser Island Landfill. The parties agreed on thirty-day payment terms.

10.     Throughout the term of the agreement, Southern typically invoiced Custom on a weekly basis and was paid for the tonnage listed on the Southern provided WM "Fast Lane" tonnage reports.

11.     Southern performed the agreed on work, and Custom paid all of Southern's invoices from June 2017 until February 2019 at the rate of $11.00 per ton as determined by the WM "Fast Lane" tonnage reports and weigh tickets from the Chesser Island Land Fill.  Custom generally paid in accordance with the agreed on thirty-day payment terms, which was memorialized in Southern's invoices.

12.     In February 2019, Southern and Custom renegotiated their agreement and modified the hauling price from $11.00 per ton with a 20 ton minimum to $16.00 per ton with a 20-ton minimum because drivers were quitting the job as they were not averaging more than two

---

[1] Waste Management's "Fast Lane" reports are generated through a proprietary software that creates a spreadsheet with the tonnage and weights based on the scales at the Chesser Island Landfill.

loads per day. This hauling opportunity should have warranted three loads per day, but it typically did not due to Custom favoring its drivers over Southern's drivers.

13.     After renegotiating and agreeing on the new hauling price in February 2019, Southern performed the agreed-on work, and for the majority of 2019, Custom paid all of Southern's invoices at the rate of $16.00 per ton with a 20-ton minimum as determined by the WM "Fast Lane" tonnage reports and weigh tickets from the Chesser Island Land Fill.  Custom generally paid in accordance with the agreed on 30 day payment terms, which was memorialized in Southern's invoices.

14.     Beginning in August 2019, Custom's billing system began experiencing technical issues with its billing email address (brokers@customecology.com) where all invoices were previously sent, and in September 2019, Custom terminated its primary billing contact for Southern, Bruce Campbell, and replaced Mr. Campbell with Thane Harrison.

15.     Upon information and belief, Custom's corporate management changed with a private equity firm playing a larger role in the company's management, which new management implemented cost saving measures, such as terminating employees and electing not to pay certain vendors, including Southern, to drive up profits.

16.     In October and November 2019, Custom's employee, Thane Harrison, indicated that Custom was having its own "internal issues" with respect to paying bills and stated that he would work with Southern to resolve the issues.

17.     Currently, Custom has issued payments to satisfy all of Southern's invoices issued before January 26, 2020, at the agreed on fee per ton as determined by the WM "Fast Lane" tonnage reports and weigh tickets from the Chesser Island Land Fill in accordance with the parties' prior performance and agreement.

18.     For more than six months, Southern has worked in good faith with Custom to

assist with Custom's internal accounting and management issues, including providing all back up tonnage reports and weigh tickets.

19.     Southern also installed and donated a mailbox onsite at the Clay County Transfer Station in an effort to help Custom with daily ticket accumulation, hired a part time manager to assist with driver and logistics management for the Custom job, and installed GPS units on all 14 hired Clay County trucks.

20.     Despite Southern's efforts to help Custom, Custom has not made payments towards any of Southern's invoices from January 26, 2020 through April 27, 2020. The principal amount owed on the invoices, which is based on the WM "Fast Lane" tonnage reports and weigh tickets from the Chesser Island Land Fill, is $688,053.46. Copies of all unpaid invoices are attached hereto as Exhibit A, and their terms are incorporated herein by reference.

21.     For more than the last six months, Custom has indicated that it was "reconciling" the invoices, and has never indicated that its non-payment was related to any performance deficiencies by Southern.

22.     At the end of April 2020, Thane Harrison with Custom, indicated that Custom no longer needed Southern's assistance with hauling operations due to low trash volumes.

23.     Since the operations ended in late April 2020, Custom has not made a single payment towards Southern's outstanding invoices for services previously rendered dating back to January 2020.

24.     Unlike Custom, Southern has paid all of its associated vendors to support the previously hauled tonnage. These costs were incurred by Southern with the understanding that Custom was going to continue to pay within the thirty-day payment terms previously agreed to and performed by Custom.  Custom's failure to timely pay has put a significant strain on Southern, its employees, and their families.

25.     Southern honored its agreements with vendors. Custom has not.

26.     In addition to the thirty-day payment terms agreed to by the parties, Southern and Custom agreed to and performed in accordance with and subject to Southern's invoice terms. Specifically, Southern and Custom agreed that any invoices outstanding five days beyond the thirty-day payment term "are subject to an 8% per month finance charge based on the total amount invoiced." Ex. A, Invoices. They further agreed, "in the event it becomes necessary to refer this invoice to collections, customer will be liable for all fees incurred, including reasonable attorney's fees." *Id.*

27.     Southern provided services and, until January 26, 2020, Custom performed under the parties' agreement and invoice terms.

28.     At no point did Custom indicate that it did not agree to the invoice terms, and instead requested Southern's services and previously issued payments under the invoice terms.

29.     Custom's excuse for non-payment has been that they need to "reconcile" the invoices due to their own internal accounting issues, which has been going on for more than six months.

30.     Custom has acknowledged that it owes in excess of $440,000; however, Custom has refused to pay anything towards this undisputed amount. Custom's bad-faith failure to pay is made worse due to the fact that it was paid by WM for all of work performed by Southern.

31.     Southern has acted patiently and reasonably to avoid litigation associated with Custom's six months of nonpayment. Indeed, on May 28, 2020, Southern's Operations Manager, Chase Carlton, offered a payment plan to help Custom get caught up on the outstanding payments; however, Southern's good-faith attempts to reach a resolution and avoid litigation were met with silence.

32.     Custom has not issued any payments towards the outstanding invoices, which

forced the filing of this lawsuit.

33.     All conditions precedent to the institution and maintenance of this action have been satisfied or waived.

## CAUSES OF ACTION

## COUNT I: BREACH OF CONTRACT

34.     Southern repeats and realleges each of its prior allegations as if set forth verbatim herein.

35.     Southern and Custom entered into a binding and enforceable agreement for Southern to provide waste hauling services in support of Custom's trash hauling operations in Florida as set forth above.

36.      From June 2017 until January 2020, Southern and Custom performed in accordance with the agreement and corresponding invoices.

37.     Southern performed all of its obligations under the agreement until it was asked by Custom to cease hauling operations in late April of 2020 due to low trash volumes.

38.     However, Custom materially breached the agreement by failing to pay Southern's invoices from January 26, 2020 through April 27, 2020.

39.     Per the parties' agreement, the principal amount owed by Custom to Southern is $688,053.46. *See* Ex. A.

40.      Additionally, due to Custom's failure to timely pay each invoice within thirty-five days, Custom currently owes $89,252.40 in finance charges in accordance with the parties' agreement and corresponding invoices. Each month Custom delays payment, the more this amount continues to grow.

41.     Further, under the agreement and corresponding invoices, Southern is entitled to recover its reasonable attorneys' fees and costs in collecting the outstanding amounts owed.

7

42.     As a direct, proximate and foreseeable result of Custom's breaches of the agreement and corresponding invoices, Southern sustained actual and consequential damages, and is entitled to receive a judgment against Custom for the $688,053.46 principal amount owed, the $89,252.40 in current finance charges, any additional monthly finance charges that continue to accrue, and Southern's costs and fees in seeking to collect this amount.

## COUNT II: UNJUST ENRICHMENT

43.     Southern repeats and realleges each of its prior allegations set forth in paragraphs 1 through 33 above.

44.     As discussed herein, Southern conferred benefits on Custom by providing waste hauling services in support of Custom's operations in Florida.

45.     Custom requested and accepted Southern's services.

46.     Custom has not paid or otherwise offered compensation to Southern for the services Southern rendered from January 13, 2020 to April 18, 2020, as evidenced by the attached invoices. *See* Ex. A.

47.     The flow of the benefit to Custom without recompense to Southern is unjust and inequitable under the circumstances.

48.     As a direct, proximate and foreseeable result of Custom's unjust and inequitable actions, Southern was damaged, and is entitled to receive a judgment against Custom.

## <u>JURY TRIAL DEMAND</u>

49.     Southern demands trial by jury of all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Southern prays that judgment be granted in its favor against Custom for actual damages, consequential damages, attorneys' fees and costs, and for such other and further legal and equitable relief as the Court deems just and proper.

Dated: June 19, 2019.

**HOLLAND & KNIGHT LLP**

/s/ *Justin W. Dixon*
Joshua H. Roberts (FBN 42029)
joshua.roberts@hklaw.com
Justin W. Dixon (FBN 105860)
justin.dixon@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, FL 32202
(904) 353-2000 (telephone)
(904) 358-1872 (facsimile)

*Attorneys for Southern Logistics, Inc.*